UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EDDIE SEALS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:16-cv-01975-JMS-MJD |
| | ) |
| NANCY BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Eddie Seals applied for disability insurance benefits and supplemental security income from the Social Security Administration ("SSA") on May 16, 2011, alleging an onset date of July 15, 2010. [Filing No. 10-5 at 2-14.] His applications were initially denied on July 5, 2011, [Filing No. 10-4 at 2-9], and upon reconsideration on September 8, 2011, [Filing No. 10-4 at 15-28]. Administrative Law Judge Ronald T. Jordan (the "ALJ") held a hearing on August 29, 2012, [Filing No. 10-2 at 28-63], and issued a decision on September 25, 2012, concluding that Mr. Seals was not entitled to receive disability insurance benefits or supplemental security income, [Filing No. 10-2 at 11-23]. The Appeals Council denied review on February 20, 2014. [Filing No. 10-2 at 2-4.] Mr. Seals then filed a civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 10-16 at 3.] On November 14, 2015, the Court adopted the Magistrate Judge's Report and Recommendation and reversed and remanded the Commissioner's Decision. [Filing No. 10-16 at 2-13.] The ALJ held a second hearing on

---

[1] The Court has substituted Nancy Berryhill as the proper Defendant in this action, given that she became the Acting Commissioner of the Social Security Administration on January 23, 2017. *See* "Meet Our New Acting Commissioner," Social Security Administration Blog, available at http://blog.ssa.gov/meet-our-new-acting-commissioner (last visited June 5, 2017).

1

February 25, 2016, [Filing No. 10-15 at 33-71], and issued a decision on March 25, 2016, once again concluding that Mr. Seals was not entitled to receive disability insurance benefits or supplemental security income, [Filing No. 10-15 at 2-23]. On July 25, 2016, Mr. Seals timely filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

## II.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id*. at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

2

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An

award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### BACKGROUND

Mr. Seals was twenty seven years old when he filed for disability insurance benefits and supplemental security income. [Filing No. 10-5 at 2-14.] He has previous work experience as a fast food manager and a cashier. [Filing No. 10-2 at 33-38.][2] Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on March 25, 2016, determining that Mr. Seals was not entitled to receive disability insurance benefits or supplemental security income. [Filing No. 10-15 at 2-23.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Seals had not engaged in substantial gainful activity[3] since July 15, 2010, the alleged onset date. [Filing No. 10-15 at 7.]

- At Step Two of the analysis, the ALJ found that Mr. Seals suffers from the following severe impairments: degenerative disc disease, carpal tunnel syndrome, urinary frequency, schizoaffective disorder, and anxiety. [Filing No. 10-15 at 7.]

- At Step Three of the analysis, the ALJ found that Mr. Seals did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 10-15 at 8.]

- After Step Three but before Step Four, the ALJ found that Mr. Seals has the RFC to perform work at the light exertional level as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b), with the following limitations: "[H]e can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently.

---

[2] Both Mr. Seals and the Commissioner detailed pertinent facts in their briefs, and the opposing party did not dispute those facts. [Filing No. 16; Filing No. 20.] Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Seals, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

4

> He can stand and walk 6 hours in an 8-hour day. He can occasionally stoop, balance, crouch, kneel, crawl and climb ramps or stairs. He should never climb ladders, ropes, or scaffolds. He should never work at unprotected heights or unguarded moving machinery . . . . He should have ready access to a restroom. He is limited to work involving simple, repetitive tasks requiring minimal independent judgment regarding basic work processes and work goals from day to day should be static and predicable. He should have only occasional, superficial contact with coworkers, but no contact with the general public. He should never be required to travel away from the work place." [Filing No. 10-15 at 11.]

- At Step Four of the analysis, the ALJ found that Mr. Seals is unable to perform any past relevant work. [Filing No. 10-15 at 21.]

- At Step Five of the analysis, the ALJ found that considering Mr. Seals' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Mr. Seals can perform – specifically, janitorial cleaner, protective clothing issuer, and equipment cleaner. [Filing No. 10-15 at 21-22.]

## IV.
### DISCUSSION

Mr. Seals challenges the ALJ's decision on three grounds: (1) the ALJ did not account for all of Mr. Seals' impairments in conducting the RFC analysis or in apprising the vocational expert ("VE") of Mr. Seals' impairments, [Filing No. 15 at 19-24]; (2) the ALJ erroneously discounted the opinion of Mr Seals' treating mental health specialists and improperly weighed other opinion evidence, [Filing No. 15 at 24-32]; and (3) the ALJ's assessment of Plaintiff's credibility in regard to the intensity and severity of his impairments was "patently wrong." [Filing No. 15 at 32-35.] The Court will address the issues in turn.

**A. Failure to Fully Account for Mr. Seals' Impairments**

Mr. Seals argues that the ALJ failed for account for two impairments in assessing his RFC and in presenting hypothetical questions to the VE—dementia and urinary frequency. With regard to dementia, Mr. Seals argues that "the ALJ did not mention an abnormal EEG [electroencephalogram] which indicated [Mr. Seals] had 'dementia syndrome' in his decision."

5

[Filing No. 16 at 20.] Mr. Seals argues that this omission: (1) caused the ALJ "to make adverse findings at nearly every step of his decision that he might not have made had he considered the EEG evidence of dementia syndrome" and (2) resulted in "incomplete questioning of the vocational expert." [Filing No. 16 at 21-22.] In addition, Mr. Seals argues that "the ALJ did not adequately account for [Mr. Seals'] urinary frequency" by merely stipulating that Mr. Seals "would need a job which allowed for him to be near a restroom" rather than accounting for how often Mr. Seals "would be off task to use the restroom, and how that might affect the availability of 'other jobs' to him at Step Five." [Filing No. 16 at 23.]

In response, the Commissioner argues that the ALJ's failure to mention evidence related to the EEG showing dementia syndrome was "at most a harmless error." [Filing No. 20 at 9.] The Commissioner further argues that Mr. Seals "has not established this condition required any treatment or limited him to any significant degree, and has not identified any medical source opinions that the ALJ failed to consider related to this impairment." [Filing No. 20 at 10.] With regard to Mr. Seals' urinary frequency, the Commissioner argues that the ALJ considered Mr. Seals' allegation that he needed to urinate every two hours, "but explained that this frequency was not supported by his record of successful treatment that resulted in decreased voiding throughout the day." [Filing No. 20 at 10.]

On reply, Mr. Seals counters that the ALJ's failure to consider the EEG showing dementia syndrome harmed his case "at nearly every step of the ALJ's decision" by affecting "the credibility of every allegation and every medical opinion in a negative way." [Filing No. 21 at 3-4.] Mr. Seals further contends that the ALJ's failure to consider "how often or for what portion of the workday [Mr. Seals] would need to use the restroom" resulted in vocational testimony that failed to meet the ALJ's burden of demonstrating that Mr. Seals could perform other work. Further, Mr.

6

Seals contends that the ALJ failed to consider that Mr. Seals' "frequent consumption of liquids was a result of frequent dry mouth and excessive thirst caused by his medication, particularly lithium." [Filing No. 21 at 5.]

1. *Urinary Frequency*

The Court will first examine Mr. Seals' argument regarding urinary frequency, which was at issue in his initial appeal to Federal District Court. [Filing No. 10-16 at 2-13.] At that time, the Court reversed and remanded the Commissioner's decision due to the ALJ's failure to mention urinary frequency at any point in his opinion, despite clear evidence in the record supporting Mr. Seals' allegations of this impairment. [Filing No. 10-16 at 7.] On remand, the ALJ discussed Mr. Seals' urinary frequency in his decision, but made a credibility determination that Mr. Seals exaggerated his symptoms. [Filing No. 10-15 at 71.]

When an ALJ makes a credibility finding related to the RFC assessment, it will be upheld "if the ALJ gives specific reasons for that finding, supported by substantial evidence." *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009) (citations omitted). "An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). This "sound-bite" approach to record evaluation "is an impermissible methodology for evaluating the evidence." *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014). Instead, the ALJ "must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

In making the credibility determination that Mr. Seals exaggerated his symptoms, the ALJ specifically relied upon treatment notes from Mr. Seals' January 16, 2014 doctor's appointment, which provided that Mr. Seals "reported sustained marked improvement of his symptomatology."

[Filing No. 10-15 at 15; Filing No. 10-23 at 43]. However, the ALJ did not acknowledge that at the same visit, Mr. Seals' physician continued to record an impression of "[u]rinary frequency." [Filing No. 10-23 at 43]. By failing to confront or discuss evidence suggesting that Mr. Seals continued to have a problem with urinary frequency at the January 16, 2014 medical visit, the ALJ offers a selective discussion of the record that makes it impossible for this Court to conclude that the ALJ's credibility determination was supported by substantial evidence.

In addition, Seventh Circuit precedent holds that that "[i]t is important for the vocational expert to understand the full extent of the applicant's disability so that the expert does not declare the applicant capable of undertaking work in the national or local economy that the applicant cannot truly perform." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). Therefore, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citations omitted). In this case, the ALJ declined to include any limitation whatsoever regarding the frequency of Mr. Seals' restroom use in his RFC assessment or in the hypotheticals posed to the VE at the hearing. Curiously, the ALJ did include ready access to a bathroom in the RFC determination, which he determined was sufficient to account for Mr. Seals' complaints of voiding and accidents. Yet, access to the bathroom does not address the frequency of Mr. Seals' bathroom use or whether he would be able to perform the jobs identified by the VE. This is particularly concerning given that the VE testified that:

- if Mr. Seals were off-task greater than 20% of the time, "he couldn't sustain employment at that rate." [Filing No. 10-15 at 63.]

- if Mr. Seals bathroom breaks were occurring "at a frequency probably more than 10 times per day, or something of that order, he probably would have to identify it with his employer and get accommodations." [Filing No. 10-15 at 65-66.]

8

- if Mr. Seals required bathroom use of just five minutes an hour, "I think it would make it difficult for him to sustain employment at that rate." [Filing No. 10-15 at 67.]

The issue of Mr. Seals' urinary frequency is therefore highly relevant to the denial of benefits. *See Durr-Irving v. Colvin*, 600 F. App'x 998, 1003 (7th Cir. 2015) (finding evidence of urinary incontinence "highly relevant" where a vocational expert testified that a person who must use the restroom more than once an hour would be unable to perform the few jobs that met the ALJ's assessment of an applicant's RFC).

However, the ALJ's failure to confront evidence suggesting that Mr. Seals continued to have a problem with urinary frequency in January 2014 resulted in an RFC and hypothetical questions posed to the VE that fail to incorporate any limitation regarding the frequency of Mr. Seals' restroom use. Given the importance of this issue in determining whether Mr. Seals can truly perform the jobs identified by the VE, the Court finds reversible error and remands the decision of the ALJ. On remand, the ALJ should ensure that he considers all evidence in assessing his RFC and in presenting hypothetical questions to the VE.

### 2. Dementia

The Commissioner acknowledges that the ALJ failed to reference the possibility of dementia syndrome in assessing the RFC and in posing hypotheticals to the VE, but argues that this is "at most a harmless error." [Filing No. 20 at 9.] At the outset, the Court notes that the Seventh Circuit has long held that in rendering a decision, an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). However, the Seventh Circuit has also admonished the Government's frequent and overbroad use of the "harmless error" concept in defense of ALJ determinations. *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010) (citations omitted). In

determining whether an error was harmless, courts must consider whether the ALJ would reach the same result but for the error. *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)) ("An error is harmless only if court is 'convinced' that ALJ would reach same result on remand.").

Because this case is being remanded on different grounds, the Court will not perform a harmless error analysis on the ALJ's failure to reference evidence suggesting dementia syndrome. However, on remand, the ALJ should give due consideration to the possibility of dementia syndrome in assessing the RFC and in posing hypotheticals to the VE.

  **B.**  **Other Issues**

Given that the Court finds remand is required based on the first issue Mr. Seals raised – that the ALJ did not account for all of his impairments in assessing his RFC or posing hypotheticals to the VE – the Court will not discuss the other issues he raised in detail. As to the second issue, Mr. Seals argues that the Commissioner erred by erroneously discounting the opinion of his treating mental health specialists and improperly weighing other opinion evidence. [Filing No. 15 at 24-32.] The Commissioner responds that substantial evidence supports the weight that the ALJ gave to medical source opinion and other evidence. [Filing No. 20 at 5-11.] In his reply, Mr. Seals reiterates his argument that the ALJ lacked "good reason" for discounting the opinions of Mr. Seals' two physicians and erroneously weighed opinion evidence from an unidentified source. [Filing No. 15 at 1-3.] The Court notes that although "the ALJ must provide some explanation for her decision to discount a treating physician's opinion, our review is deferential." *Henke v. Astrue*, 498 F. App'x 636, 639 (7th Cir. 2012) (citations omitted). The ALJ's decision must stand as long as he has 'minimally articulated' his reasons for rejecting the treating doctor's opinion. *Id*. At 639. At the same time, "an ALJ must offer 'good reasons' for discounting a treating physician's

opinion." *Campbell*, 627 F.3d at 306 (citations omitted). On remand, the ALJ should ensure that he complies with this standard.

In connection with the third issue – the ALJ's assessment of Mr. Seals' credibility — Mr. Seals argues that the ALJ was erroneously dismissive of his allegations regarding urinary frequency, carpal tunnel syndrome, and limited social functioning. Of particular interest to the Court, in light of the evidentiary importance of Mr. Seals' urinary frequency discussed in Part 3.A.1 of this opinion, are his allegations related to increased consumption of liquids due to dry mouth caused by his use of prescription lithium. The Court notes that an ALJ's credibility finding must be upheld unless patently wrong. *Spies v. Colvin*, 641 F. App'x 628, 633 (7th Cir. 2016) (citing *Minnick*, 775 F.3d at 937). However, in making a credibility determination, an ALJ "should consider elements such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, 'functional limitations,' and treatment (*including medication*)." *Prochaska*, 454 F.3d at 738 (emphasis added). Therefore, on remand, the ALJ should ensure that he considers all evidence, including evidence related to Mr. Seals' use of prescription lithium, and builds a logical bridge from that evidence to his conclusion.

## V.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. Seals benefits and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g) (sentence four). Judgment shall issue accordingly.

Date: June 5, 2017

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

11

**Distribution via ECF only to all counsel of record**